### INEFFECTIVE EXEMPTION CLAUSE UNDER A POLICY OF TORNADO INSURANCE.

Court of Appeals for Auglaize County.

AUGLAIZE BOX BOARD CO. v. CONNECTICUT FIRE INSURANCE CO.

Decided, July 22, 1914.

*Insurance—Indemnity Against Loss from Tornado—Property Sold and Policy Assigned—Renewal of Policy Creates a New Contract, When —Assignee of Policy May Recover in His Own Right, When—Ineffectual Exemption Clause.*

1. Upon the sale of property by an insured with an assignment by the seller to the purchaser of a policy of insurance covering such property which, as required by the terms of such policy, is assented to in writing by the insurer, and which by its terms limits the parties thereto to such policy as issued and such additional modifying terms as may have been endorsed thereon in writing, a new contract of insurance arises between the purchaser and such insurer upon the terms and conditions only of the policy as originally issued, with such additional or modifying terms as may have been endorsed thereon in writing prior to such assignment.

2. Thereafter the assignee of such policy, in case of loss, is entitled to recover in his own right and is not limited to a recovery in the

right of the insured named in the policy; hence, the assignee of such a policy is not affected by an exemption clause restricting the property covered by the policy which prior to such assignment was delivered by the insurer to the insured, but was not attached to or endorsed upon the policy, as required by its terms.

*Gottschall & Turner* and *Anthony Culliton,* for plaintiff.
*Calhoun & Gunther* and *F. C. Layton,* contra.

KINDER, J.

The plaintiff, the Auglaize Box Board Company, filed its petition in the Court of Common Pleas of Auglaize County, Ohio, against the defendant, the Connecticut Fire Insurance Company, and sought a recovery for the loss of three steel smokestacks upon a policy of insurance issued to the Western Strawboard Company of St. Marys, Ohio, which policy, by its terms, agreed "to indemnify the latter company against all such immediate loss or damage as may occur by wind-storms, tornadoes and cyclones to the property in the policy described in a sum not exceeding five thousand dollars, thirty-five hundred dollars thereof being on building, etc., and fifteen hundred dollars on their machinery of all kinds, including spare parts, gas and steam pipes, shafting, gearing, tubs, vats, bleachers, straw cutters, and their foundations, boilers, engines, pumps, their connections, setting and apparatus while contained in above-described building."

The policy contained the further provision:

"And it is hereby mutually understood and agreed, by and between this company and the assured, that this policy is made and accepted upon and with reference to the terms, conditions, stipulations and restrictions herein stated and referred to, all of which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for in writing."

The petition contained appropriate averments touching the purchase of the property, so insured, from the Western Strawboard Company, and an assignment of said policy to the plaintiff with the consent and approval of the defendant company, to-

gether with the fact that the smokestacks constituted a part of the property covered by the policy under the second item therein, namely, that portion insuring the machinery, etc., and the damage thereto by the casualty insured against.

The defendant filed an answer containing nominally four separate defenses. The fourth defense sets forth facts upon which was predicated a prayer for reformation of the contract, together with the assignment thereof, which are, in substance, that the exhibit attached to the petition does not state all of the terms and conditions of the agreement actually made between the defendant and the plaintiff's assignor; that one J. L. Smith was the agent of the defendant, together with a number of other companies issuing fire and tornado insurance; that on December 10, 1900, certain policies of insurance were issued by several companies, including the defendant, to the Western Strawboard Company; that in 1903 and 1906, on the expiration of policies, new policies of like terms were issued in lieu of such expired insurance; that while issued in such form the policies were in fact renewals of the original policy issued in 1900; that the said J. L. Smith was the agent of the Western Strawboard Company, having charge of its insurance, with power to effect insurance and to substitute other insurance upon cancellation or expiration of any policies issued to such company; that the original policy, while issued without an exemption clause, was, by the requirement of the company and with the consent of the Western Strawboard Company, modified by a rider attached so as to exempt from the operation of the policy smokestacks; that the policy issued in 1903 contained such a rider and that the policy issued in 1906, and upon which the suit is brought, was, by the mistake of Smith, the common agent of the insurance company and the Western Strawboard Company, issued to the last-named. company without containing therein or having endorsed thereon the exemption clause as to such smokestacks, but that subsequently such exemption was prepared by said Smith and mailed to said company; that the mistake so made by said Smith in omitting said exemption clause was the mutual mistake of the defendant and said the Western Strawboard Company, and that defendant did not know of such omission of said exemption

clause and did not learn of the same until after the loss for which claim is made had occurred; that while the transfer of the policy from the Western Strawboard Company to the plaintiff was consented to by the defendant through its agent, Smith, neither the defendant nor said Smith, as the agent of said insured, knew that said policy did not contain therein or have endorsed thereon the clause exempting smokestacks from the operation of said policy.

The reply denied the affirmative averments of the so-called fourth defense, touching the assignment of the policy by the Western Strawboard Company to the plaintiff and the consent and approval thereof by the defendant company, together with a denial of all of the facts averred with respect to the issuance of the policy inconsistent with the averments of the petition and its right of recovery.

In the court of common pleas the fourth defense was treated as a cross-petition, and the issue tendered by said defense and the reply thereto was heard by and submitted to that court and resulted in a decree reforming the contract and the assignment as against the plaintiff in accordance with the prayer of said fourth defense or cross-petition.

Upon appeal the case is submitted to this court upon the issues thus tendered, the evidence and the arguments of counsel.

The following facts fairly appear, to-wit: In December, 1900, the Western Strawboard Company, then the owner of the buildings, machinery, etc., covered by the policy sued upon, applied for so-called cyclone insurance to one Smith, who was the agent of each of four companies, including the defendant company, and that four policies of $5,000 each were issued to the Western Strawboard Company by said companies, concurrent in their terms and provisions and the time for which the same should be effective, except that three of the policies were dated the 11th day of December, 1900, and the policy of the defendant was dated the 10th day of December, 1900. Each of said companies refused to carry such insurance unless a provision was added exempting smokestacks from the operation of such policies. This provision was assented to by the Western Strawboard Company and a "rider" was attached to each policy embodying such ex-

emption. At the expiration of three years, the term for which the policies were issued, new policies were issued, together with an additional policy of $5,000. In four of said policies the exemption clause was inserted in the body of the policy, but in the policy of the defendant company it was attached as a rider in substantially the following language: "It is understood and agreed that smokestacks are not covered by this policy."

At the expiration of such policies in 1906, new policies, in lieu of the expired policies, were issued to the Western Strawboard Company, four of which, as in 1903, had embodied in the policy the exemption covering smokestacks. The policy issued by the defendant company as issued December 10, 1906, contained no such exemption provision, either in the body of the policy or by way of rider. The acting manager of the Western Strawboard Company, at the issuance of the first policy, instructed the agent, Smith, to keep in force the policies of insurance on the property of the company in so far as they were issued through his agency. The defendant company, on January 7, 1907, discovered that the policy as issued by it did not contain the provision exempting smokestacks, either as a part of the body of the policy or by way of rider, and instructed its agent to have said provision attached to the policy, and he, after receiving a second notice from the company, prepared a rider as follows:

"St. Marys, Ohio, December 10th, 1906.
"It is understood and agreed that smokestacks are not covered under this policy. Attach to policy No. 106.
                                        "J. L. Smith, Agent."

He enclosed the same in an envelope addressed to the Western Strawboard Company with a request that the rider be attached to the policy in controversy herein, which envelope, containing such rider, was deposited in the mails. The rider was not attached to the policy by the Western Strawboard Company, and the plaintiff company, when it purchased the property and obtained the assignment of the policy with the consent thereto by the defendant company, had no notice or knowledge of the existence of such a rider or any clause or provision exempting smokestacks from the insurance provided for in said policy.

The agent, Smith, when he endorsed the consent of the company upon the policy, did not observe that the rider was not attached.

Whether such smokestacks are covered by the provisions of the policy hereinbefore quoted is not presented by the issues submitted to this court for determination. The single question is whether, under the facts above set forth, the defendant company is entitled to have the policy issued by it reformed, as against the plaintiff, by the addition thereto of the above provision exempting smokestacks. In other words, was the Auglaize Box Board Company, the assignee of the Western Strawboard Company, in privity with it and therefore subject to have the policy reformed in the manner prayed for herein, as would have been the case with the Western Strawboard Company, or did the assignment of the policy by the Western Strawboard Company to the Auglaize Box Board Company, with the consent of the defendant company, result in the creation of a new contract between the plaintiff and the defendant upon the terms of the policy as originally issued and without regard to the exemption clause of which the plaintiff company had no notice or knowledge?

If we have correctly understood the claims of the defendant company upon which it asserts the right to a reformation of the contract of insurance upon which suit is brought in this action, they are:

*First.* That the insurance agent representing the defendant company when the policy was issued was, by force of the instructions of the acting manager of the insured company at the date of the issuing of the first policy in 1900, constituted agent both of the insurer and insured, that he so remained at all times, including the issuance of the policy which is involved in this controversy, and that the omission of the exemption clause from the policy by such agent was the mistake or omission of both the insurer and insured and might be corrected by a court of equity.

*Second.* That the several policies having been issued to the same company covering the same property, and each for the same term, each policy issued upon the expiration of the preceding policy was but a renewal of the policy first issued, and

hence all of the terms of the first policy, to which the insured consented, were incorporated in the policy last issued and formed a part thereof as though written therein or endorsed thereon in writing in accordance with the requirements of the policy last issued.

*Third.* That the assignee of the last policy, the one in suit, took the same upon the terms which bound the insured named therein (the assignor): (*a.*) Because of the policy being a renewal only of the original policy, and so incorporating all of its terms; or (*b.*) the limitation clause having been mailed to the insured company before loss accrued and said insured having made no objection thereto, it is presumed to have agreed that the exemption clause should form a part of the policy, even though not actually attached thereto, and that the plaintiff as assignor is bound by the terms of the policy as so modified.

Upon the part of the plaintiff it is contended that as assignee of the policy upon purchase of the property covered thereby, it is bound only by the terms of the policy as originally written, or such modifications thereof as were endorsed thereon in writing as required by the terms of the policy, and that it can not be bound by any terms or conditions not so incorporated in the policy and of which it had no knowledge.

A policy of insurance, complete in its terms, issued upon the expiration of a former policy issued by the same company and covering the same property, is not a renewal of the policy first issued so as to incorporate in the last-issued policy any of the terms of the former policy not included in said second policy when by the terms of the later policy the company and the insured are expressly limited to the terms and conditions printed in such policy and such additional terms and provisions as may be endorsed thereon in writing with the consent of the company and the insurer.

The direction by an acting manager of a manufacturing company to an insurance agent, placing the larger part of the insurance carried by such company, to keep such insurance alive and attend to cancellations by effecting other insurance in place of policies canceled, does not constitute said insurance agent the

common agent of the insuring company and such manufacturing company as to policies issued to said company through such agent four years after such acting manager had severed all connection with such manufacturing company, and hence a mistake of such agent in omitting a clause exempting certain property from the provisions of such policy will not, under such circumstances, constitute a mutual mistake of the insurer and insured against which relief in equity may be granted to such insurer by a reformation of the policy so as to include such omitted exemption clause.

Upon the purchase of property of the insured with an assignment of the policy of insurance covering such property by the seller to the purchaser, which is assented to in writing by the company issuing the policy, a new contract of insurance arises between the purchaser and the insurer upon the terms and conditions only of the policy as originally issued or such additional or modifying terms as may have been endorsed thereon in writing prior to such assignment, and thereafter such assignee of the policy, in case of loss, is entitled to recover in his own right and is not limited to a recovery in the right of the insured named in the policy as is the case when the transfer of property is not absolute and the assignment is for security. Hence, the assignee of such policy is not affected by an exemption clause restricting the property covered by the policy which was mailed by the agent of the insuring company to the insured under the policy, but which was not attached to or endorsed upon said policy as required by its terms when issued, and especially is this true when it is not shown that the purchaser or assignee had any knowledge of the existence of such restrictive clause.

Judgment for plaintiff.

CROW, J., and DONNELLY, J., concur.