THE ATHENS & POMEROY COAL & LAND CO. *v.* TRACY.

*Mines and mining—Trespass and conversion of coal—Agreement assigning rights to damages,'not champertous—Remedies of owner where coal wrongfully removed—Damages to real estate, replevin or damages for conversion—Trespass waived by suing for conversion—Owner may recover damages for realty removed—Pleading conversion and for injury to realty—Plaintiff to elect as to remedy—Presumption of wilful intent, and burden to prove good faith—Measure of damages—Innocent and wilful conversion of coal—Value where innocent purchaser held—Punitive damages not recoverable from corporation—Unauthorized and unratified acts of mine superintendent in overmining.*

1. An agreement between fee owners and lessee by which own-

ers assigned their rights to damages for trespasses and conversions of coal in land, and lessee agreed to pay 10 cents per ton upon as many tons as he should recover damages for, and to assume expenses, though resulting in disproportionate recovery in favor of lessee, *held* not champertous.

2. Where one wrongfully removes coal from another's land, owner can sue for damages to real estate, or may treat mined coal as his own property, and, if capable of identification, can replevy it, or can sue for damages resulting for conversion.

3. In suing for damages for conversion of mined coal, removed from land, owner must waive trespass on his real estate.

4. In suit for damages to real property, where coal has been wrongfully removed, owner can recover for value of the real estate removed as well as for injuries to property not taken, without specially pleading value of that taken.

5. Where petition contained two causes of action, one for conversion of coal and one for injury to real estate by removal of coal from land, and motions were severally made to take each cause of action from jury, when first was overruled second should have been sustained.

6. Where mine operator extends operations over the line, and removes coal from another's land, it is presumed he intended so to do, and burden is upon him to prove that he acted in good faith.

7. For innocent conversion of coal by overmining, measure of damages is value of coal in place at time it was mined.

8. In case of a willful conversion of coal by overmining, and an innocent purchaser be held for its value, value will be determined as of time when severance occurred.

9. For willful conversion of coal by overmining, measure of damages is value on the tipple of coal taken.

10. Value on the tipple of coal converted, being punitive damages, cannot be recovered from corporation, notwithstanding its mine superintendent knew he was overmining, unless corporation authorized or ratified the act.

(Decided March 23, 1925.)

ERROR: Court of Appeals for Meigs county.

*Mr. A. D. Russell* and *Messrs. Jones & Jones,* for plaintiff in error.

*Mr. D. Curtis Reed,* for defendant in error.

MAUCK, P. J. The plaintiff, James E. Tracy, filed an amended petition containing two causes of action. In the first he set up that since April, 1920, he had been the owner of a certain leasehold for the purpose of mining coal on certain lands in Meigs county; that part of his lessors, the owners of all but a fraction of the fee, have assigned to him whatever rights they may have against the defendant for the acts complained of. Then follows the gist of this cause of action in these words:

"At some time or times between the 1st day of January, 1920, and the 7th day of December, 1920, the exact date or dates being unknown to this plaintiff, the Athens & Pomeroy Coal & Land Company, defendant, willfully, knowingly, wrongfully, and unlawfully mined, took, and carried away large quantities of plaintiff's coal, amounting in all to about 2,500 tons, from the premises hereinbefore described, to the damage of the plaintiff in the sum of $10,000."

By his second cause of action the plaintiff says that the defendant willfully broke and entered the premises by driving entries and rooms in the coal thereunder, and by removing the coal therefrom, and that entries and rooms were so driven as to render unminable a large amount of coal, to his damage in the sum of $4,000, and "has further damaged him in the mining of the remaining coal in the sum of $2,000."

Damages were prayed for in the sum of $16,000.

The defendant answered, admitting that it had mined and removed 1,896 tons of coal from the premises, otherwise denying the amended petition, and especially denying that the removal of the coal was willfully done.

Trial was had, and a verdict was returned for $5,000, the answers to special interrogatories indicating that the whole $5,000 was predicated on the first cause of action, and nothing on the second. Judgment was entered upon the verdict, and this proceeding is to reverse that judgment.

It is vigorously urged that the assignment by the owners of the fee to the plaintiff of their interest in the proceeds of the litigation is champertous and void, and this view becomes impressive when it appears that the result following the payment of the judgment will be that the owners of the property jointly realize $189.66, while the plaintiff, who owns no part of the land, receives $4,810.34. It appears that the owners of the fee were the heirs or devisees of Robert J. Hiland, and that the wife of the plaintiff was one of seven of these devisees. Another had a life estate in the whole tract. They were residing in widely scattered cities and states. Shortly after the defendant's trespass had begun, these heirs began the execution of a regular mining lease of the property to the plaintiff, and concurrently made to him the assignment, by virtue of which he brings this action. By his mining lease the plaintiff was to pay ten cents per ton royalty on the coal mined by him. The various assignments recite that the several signers have leased the lands to the plaintiff, and that it appears that

the defendant has encroached upon the lands and removed coal therefrom, and continues:

"We therefore hereby assign to the said James E. Tracy any right which we may have to damages for the trespasses into and the conversion of said coal by said the Athens & Pomeroy Coal & Land Company or other parties.

"In consideration whereof said James E. Tracy agrees to pay royalty according to the terms of said lease upon as many tons of said coal as he may recover damages for; said Tracy assuming and paying all expenses by way of costs, attorney fees, or otherwise included in the attempt to collect such damages."

When this assignment is studied in connection with the petition, it would appear that the expectations of the plaintiff were to recover $16,000 from the defendant, and that the injured owners of the fee would receive $250 of this recovery, while the plaintiff, who at that time had suffered no injury, would receive $15,750. This is apparently an unjust situation, but, as we shall hereafter point out in discussing the measure of damages, it is due, not to the real property rights of the parties, but to the possible penalties that might be imposed upon the defendant. But no court would feel any particular inclination to draw overnice distinctions to favor the trespasser whose devastations had warranted so great a recovery. Sufficient to say that the language quoted under the state of facts claimed by the plaintiff does not make a champertous contract under the modern views expressed in *Reece* v. *Kyle*, 49 Ohio St., 475, 31 N. E., 747, 16 L. R. A., 723. The figures, just employed to show the disparity be-

tween the possibilities of the case as they promised relief to the respective parties to the assignment, while in the record of this case, are not necessarily within the law by which the case must be ultimately determined.

That the lands in question were invaded by the defendant and coal taken therefrom to the amount of 1,896 tons is admitted. The testimony did not disclose any guilty knowledge on the part of the president or other general officers of the company, but there was testimony to the effect that the superintendent of the mine knew that he was operating over the line. This trespass on, and injury to, the real estate gave rise primarily to an action at law for damages. *Forsyth* v. *Wells,* 41 Pa., 291, 80 Am. Dec., 617. The owner was, however, given two other alternative remedies. He might treat the mined coal as his own property, and, if its identity had not been lost, recover possession of the same by replevin. Just at what time this remedy ceases to be available because of the change in identity is frequently a difficult question; the difficulty being inherent from the fact that the remedy is artificial. It is based on the fiction that the owner has been deprived of a chattel, when in fact he has been injured as to his real estate. It is a useful expedient, however, and is not to be denied because its employment in a given case may be impracticable. The other alternative remedy is to sue for the damages resulting from the conversion of the severed property. It is the old action of trover. It presupposes the ownership by the plaintiff of the article severed from the real estate, as though the severance had been accomplished by the owner

himself, and rests upon the fiction that the defend-
ant had found, or otherwise became possessed of,
such chattel, and unlawfully converted the same to
his own use. It is a highly desirable remedy in
case the original trespasser is insolvent, and a re-
sponsible party has come into the possession of the
severed article, and by using the same rendered
himself liable for its value, but again it presents
difficulties in fixing a measure of damages, and this
difficulty logically arises from the fictitious suppo-
sitions of fact out of which it proceeds. Logically,
if the severed article is the plaintiff's chattel, and
if he has a right to recapture it in any form, it
would follow, to use an old illustration, that one
who had been injured as to his real estate by hav-
ing a trespasser dig and take away a cartload of
iron ore worth a shilling might by tracing the pro-
cesses through which the ore passed recover of a
merchant the value of his whole ore bed by recov-
ering damages from the merchant of the value of
the watch springs finally made of the ore. These
difficulties were such as beset the Ohio courts in
*Lake Shore & Mich. So. Ry. Co.* v. *Hutchins,* 32
Ohio St., 571, 30 Am. Rep., 629; *Id.,* 37 Ohio St.,
282; and *Keys* v. *Pittsburg & Wheeling Coal Co.,*
58 Ohio St., 246, 50 N. E., 911, 41 L. R. A., 681, 65
Am. St. Rep., 754. Omitting for the moment the
measure of damages, we see from the cases men-
tioned the propriety of the action in conversion
when applied to such a case as this, but we see as
well that this case has been tried on an erroneous
impression of the theory under which conversion
lies. The *Hutchins case* was one for converting
lumber made from growing trees unlawfully sev-

ered from plaintiff's land. Judge McIlvaine, 37 Ohio St., 293, said:

"And surely, as the labor of felling the trees was a trespass on the real estate of the plaintiff, *who has waived the wrong done to his realty,* such labor was not an accession to the value of his personal property, which the trees first became after they were cut down and severed from the land. The value, at least, of the property after it became personal was the measure of the injury complained of by the plaintiff."

We have italicized the language of immediate importance, which is that, in suing for damages for converting the value of the severed article, the plaintiff must waive the trespass on his real estate. For surely, if the severed tree became the owner's property, he ratified the act that converted it from a standing tree to merchantable lumber.

4 Sutherland on Damages (4th Ed.), Section 1108, recognizes the same rule, and quotes with approval Lord Mansfield: "In *form* it (*i. e.,* the trover) is a fiction; in *substance* it is a remedy to recover the value of personal chattels wrongfully converted by another to his own use; the form supposes that the defendant might have come lawfully by it; and if he did not, yet by bringing this action the plaintiff waives the trespass; no damages are recoverable for the act of taking; all must be for the act of converting."

The plaintiff proceeded upon a mistaken theory when he undertook in his amended petition to recover both for damages to the real estate and for a conversion of the coal that had been severed by the process. In an action for damages to the real prop-

erty., he could be compensated for the value of the real estate removed as well as for the injuries to the property not taken, and this without specially pleading the value of that taken.

"Under that form of action the severance of the property from the freehold is the essential fact, and so far as it diminishes the value of the land the owner is entitled to compensation. The value of the timber need not be averred, but may be proved to show the amount of damages, as may the value of fruit raised where an orchard has been destroyed." 4 Sutherland on Damages (4th Ed.), Section 1019.

The plaintiff accordingly had a right to pursue the remedy promised by either of his causes of action, but had no right to both. He had a right to select that remedy that seemed best calculated to give him the larger recovery, which from his petition one would think would be his second cause of action, as he alleges therein that the damages to the freehold are greatly in excess of any possible value which might be given to the coal mined. It may be said that this particular question was not raised before or at the trial, and that, inasmuch as the jury found for the defendant on the second cause of action, the question is not saved and the error not prejudicial. This view is too narrow. While no motion to compel an election was made in so many words, motions were severally made to take each cause of action from the jury. When the first of these was overruled, the second should have been sustained. Moreover, while the answers to the interrogatories disclose that no award was formally made for damages asserted under the sec-

ond cause of action, it is not conclusive that the fact that there were such damages did not help to determine the amount of the award made under the first cause of action. The defendant in error seems of the same view, for, in connection with his argument to justify the assignments made to him against the charge of champerty, he suggests the probability of the damages to the freehold entering into the general verdict, and this view finds support in the fact that the verdict was an even $5,000. The record shows too much evidence of injury on the second cause of action for it to be now said that the jury was wholly uninfluenced by it in arriving at its verdict.

One other feature of the case may be disposed of in a sentence. There was no error prejudicial to the defendant in allowing proof to be offered of the acquisition of Mrs. Tracy's interest in the way it was offered.

The court refused to give a special instruction before argument to the effect that a presumption arose that the defendant committed the trespass in question inadvertently. In any other sort of action but that at bar refusal to give such an instruction would probably be prejudicial error. The ease, however, with which an abutting operator can mine over the line, and the difficulties surrounding the owner in detecting and preventing such subterranean encroachments, have led to the adoption of a different rule in this class of cases, and that is that if the operations of a mine extend over the line it will be presumed that such extensions were knowingly made. In other words, the defendant who ought to have stayed on his own property is

bound to prove the innocent nature of his trespasses, or be held to be a willful wrongdoer. This rule, apparently harsh, but born of expediency, has received general recognition.

"The act of trespassing creates a presumption of willfulness and puts on the defendant not merely the burden of going forward, but makes it necessary for him to prove by a preponderance of the evidence that he acted in good faith." Lindley on Mines, Section 868.

Judge Sanborn thus puts it in *United States* v. *Ute Coal & Coke Co.,* 158 F., 20, 23, 85 C. C. A., 302, 305: "There is a legal presumption that one who takes or converts to his own use the property of another intends so to do, and a jury may lawfully infer from such taking and conversion and the wrongdoer's reckless disregard of the owner's right and title that he had knowledge of that right and title, and intended to appropriate his property to his own use in the absence of persuasive evidence of his innocence and good faith." See, also, *Liberty Bell Gold Mining Co.* v. *Smuggler-Union Mining Co.,* 203 F., 795, 122 C. C. A., 113, and cases cited therein.

The requested instruction was, therefore, properly refused.

The question then arises as to what measure of damages should have been applied in case the conversion in question was willful. The difference between the parties in this respect is this: The court charged that if the conversion was willful, the plaintiff should recover the value on the tipple of the coal taken. The defendant claims that the measure of recovery should have been the value of

the coal when first severed, as it lay on the floor of the mine. Different rules obtain in different jurisdictions as to the measure of damages, both in innocent and willful conversion. In Ohio it has been settled that if the conversion is innocent, the owner may recover only the value of the coal *in situ* (*Keys* v. *Pittsburg & Wheeling Coal Co.,* 58 Ohio St., 246, 50 N. E., 911, 41 L. R. A., 681, 65 Am. St. Rep., 754), and it has been determined that if the trespass is willful, but an innocent purchaser be held for the value of the converted property, such value will be determined as of the time when severance occurs (*Railroad Co.* v. *Hutchins,* 32 Ohio St., 571, 30 Am. Rep., 629; *Id.,* 37 Ohio St., 282), and under such circumstances the measure for converted coal would be the value of the same on the mine floor.

We have been cited to the unreported case of *Thompson* v. *Carbondale Coal Co.,* referred to in 51 Ohio St., 589, for the rule fixing the measure of damages in cases of willful and of ordinary conversion. An examination of the record in the office of the clerk of the Supreme Court shows that in that case, tried in Athens county in 1890, Judge De Steiguer charged the jury that if the overmining was done by the defendant corporation, "in good faith supposing that it was mining on its own lands, then the rule of damages as to the coal mined and removed is its value *in situ* in the coal vein; that is its value before dug."

He further charged that if the trespass was knowingly and willfully committed, "then the rule of damages as to the coal mined and removed would be the value of the coal mined and removed as it

lay on the bottom of the mine before it was loaded into the bank cars.''

Exceptions were taken to these two charges, but in Supreme Court the plaintiff in error expressly waived any claim of error as to the last instruction quoted, and sought reversal only on the ground that the rule was erroneously stated in case the overmining was done in good faith. Whether a similar waiver was made in the circuit court is not known. The rule in the *Thompson case* is, therefore, authoritative only to the extent that such was the opinion of the learned De Steiguer. Otherwise we are unaware that the rule in such cases has been fixed in this state by any authority.

It would not be profitable to follow the authorities and show how and why some follow one line and some another. The fact is clear that in most of the states the rule that the trial court followed in this case prevails, and a collection of authorities can be easily made. 7 A. L. R., 922; Costigan on Mining Law, 513; 2 Sedgwick on Damages (9th Ed.), Section 500.

If a rule has not been definitely established in this state, the field of inquiry is open to ascertain what is the reasonable and right rule. The difference in the measure of damages allowed for an innocent and a willful conversion lies in public policy. As a strict matter of right *inter partes,* the just claims of one wronged by an unlawful conversion of his goods are satisfied when such owner is fully compensated therefor. If the owner, however, were to be limited to compensation, there would be no inducement for the evil-minded conversioner to refrain from the trespass. The wrong-

doer might, for instance, in a coal mine encroach upon his neighbor, take away his coal, and reap a handsome profit, after paying the owner merely compensatory damages. To prevent this the rule is applied that the willful trespasser must reap no advantage through his wrongdoing, not strictly as a matter of right to the property owner, but as a deterrent to wrongdoers. It is nothing more or less than the application of a fixed rule for exemplary damages imposed as a matter of public policy. Thus Judge Wright put it in the first *Hutchins case,* 32 Ohio St., 582 (30 Am. Rep., 629):

"The fact that the trespasser is to lose the labor and expense he has put upon property he has wrongfully taken results as a punishment to him for what he has done; on this ground the original owner recovers the increased value, not because of any rights in him, but because the law gives this infliction, as a terror to offenders."

And in the second *Hutchins case,* 37 Ohio St., 282, Judge McIlvaine said that when the plaintiff elects to sue in damages for conversion, justice requires that he be compensated, and nothing more. But, he adds (page 294):

"True, the law permits an award of damages in excess of this rule of compensation, when the wrongful act was wanton or otherwise aggravated. But this is permitted by way of punishing the wrongdoer, and for example's sake. It is not a matter of legal right in the injured party. For every wrong done, if it can be redressed in damages, the rule is that the injured party shall have compensatory damages, and if the wrongful act was

willful, wanton, or malicious, punitive damages may also be awarded.''

The principle that no one should profit by his own wrong would be violated by the adoption of the rule contended for by the defendant. It is perfectly illustrated by the case at bar. The coal in the hill here was worth but 10 cents per ton. When cut down on the floor of the mine, it was worth perhaps less than $1. It was worth at the particular time in question several times this amount at the tipple. If this rule were now applied, the defendant would greatly profit from its own wrongdoing, even though the jury found such wrongdoing to be the purposeful act of the corporation itself. Good morals and sound public policy protest against such a rule. Our conclusion is that the instruction in this particular was correct.

In another respect, however, the charge was erroneous. The jury was instructed that, as a matter of law, the knowledge and acts of the mine superintendent were the knowledge and acts of the defendant, and that, if the trespass was willful on his part, it was willful on the part of the defendant. It must be observed that this severe measure of damages is not given the plaintiff because of any real right of his thereto, but it is exacted from the defendant as a punishment for his wrongdoing. As we have pointed out, the presumption is that the trespass was willful, but the defendant has a right to exculpate himself. In clearing himself of guilt he is not bound to go further and clear all his employes, for, while he can be required to compensate others for the wanton injuries of his servant, he cannot be punished for their personal derelic-

tions. A contrary view was long entertained in this state, where it was thought that Ohio differed from other states in not recognizing that guilt is personal. This was due to the opinion in *Atlantic & Great Western Ry. Co.* v. *Dunn,* 19 Ohio St., 162, 2 Am. Rep., 382. In *Columbus Ry., P. & L. Co.* v. *Harrison,* 109 Ohio St., 526, 143 N. E., 32, this state was put in line with other jurisdictions in holding that the employer could not be punished for the personal guilt of the servant, and that punitive damages could not be assessed against the employer unless such employer authorized or ratified or participated in the wrongdoing. In a case for willful conversion of coal, a measure of damages in excess of the actual compensation due the owner for his injury is but a fixed rule for realizing punitive damages.

For the errors indicated, the judgment is reversed and the case remanded for new trial.

*Judgment reversed and cause remanded.*

SAYRE and MIDDLETON, JJ., concur.