NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1662
_____

JOHN R. KRAUTER,
                                        Appellant

v.

SIEMENS CORPORATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(2-16-cv-02015)
District Judge:  Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 24, 2017

Before:  GREENAWAY, JR., NYGAARD and FISHER, *Circuit Judges*.

(Filed: February 16, 2018)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

    Plaintiff John R. Krauter appeals the District Court's grant of Defendant Siemens

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Corporation's motion to dismiss. We will affirm.

I.

Krauter worked for Siemens for 27 years, ultimately as Senior Vice President and Chief Financial Officer. He participated in several retirement plans governed by the Employee Retirement Income Security Act of 1974 (ERISA): two defined benefit plans[1] and two defined contribution, or individual account, plans.[2] After Krauter's employment at Siemens concluded, Siemens sold one of its business divisions to Sivantos, Inc. As part of the sale, Siemens transferred to Sivantos the obligation to pay Krauter's benefits.

Krauter sued Siemens. Counts One through Five of the complaint, all ERISA claims, were as follows: (1) breach of fiduciary duty, (2) engaging in a prohibited transaction, (3) declaratory judgment to enforce rights, (4) declaratory judgment to recover benefits, and (5) failure to provide information. Count Six was a promissory estoppel claim based on the allegation that Siemens had promised Krauter it would be responsible for paying his pension benefits.

Krauter alleged that he was injured because: he would not have invested in the

---

[1] The Siemens Pension Plan was a qualified plan, *i.e.*, one that receives favorable tax treatment. The Siemens Pension Preservation Plan was a non-qualified plan for management or highly compensated employees.

[2] The 401(k) Plan was qualified, while the Deferred Compensation Plan was not. For simplicity, this opinion uses the term "Deferred Compensation Plan" to refer to both that Plan and the Key Employee Retention Plan, a nonqualified plan for management or highly compensated employees. The liability for the Key Employee Retention Plan was transferred to the Deferred Compensation Plan before the events at issue in this litigation.

plans if he had known they would be transferred; the transfer "substantially increased [his] risk of loss;"[3] an insurance policy and a trust meant to protect participants in the event of default were nonexistent or insufficient; some defined-contribution investment options were no longer available after the transfer; and some of the new investment options "charged considerably higher management fees" and "generated less return than the investment vehicles [he] had chosen through Siemens."[4] Krauter did not allege that Sivantos had failed to pay him any benefits he was owed.

To redress his alleged injuries, Krauter requested compensatory and statutory damages for himself, as well as compensation and restitution for the plans. Krauter also sought a declaratory judgment that would rule the transfer a prohibited transaction and enforce his rights in a variety of ways: by "enjoin[ing]" the transfer, "render[ing] [it] void *ab initio*," causing the pension plans to be "transferred back to Siemens," and ordering that Krauter "shall continue to receive" benefits "according to the prior payment schedule."[5]

Siemens filed a motion to dismiss, which the District Court granted. It ruled that Krauter lacked Article III standing to assert all of his claims, and in addition, he had not exhausted administrative remedies for his claims relating to the defined contribution plans. While Krauter's briefing mentioned in passing the possibility of amending his

---

[3] App. 26.
[4] App. 29.
[5] App. 33-41.

complaint, the District Court did not grant leave to amend (or mention amendment).

## II.

In his complaint, Krauter invoked the District Court's federal question jurisdiction and ERISA's specific jurisdictional grant.[6] The District Court, like all federal courts, "always has jurisdiction to determine its own jurisdiction."[7] We have appellate jurisdiction to review the District Court's final order.[8]

Our review of a ruling on a motion to dismiss, as well as a standing determination, is plenary.[9] We review a ruling on amendment of a complaint for abuse of discretion.[10]

## III.

Krauter makes multiple arguments on appeal. We address them in turn, explaining where we agree with the District Court and where we will affirm on other grounds.

### A.

Krauter first argues that the District Court misapplied the dismissal standard because it disregarded his allegations, did not assume their truth, and considered facts outside the complaint. Our review reveals no misapplication of the standard.

---

[6] 28 U.S.C. § 1331; 29 U.S.C. § 1132(e)(1).
[7] *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 142 (3d Cir. 2017) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).
[8] 28 U.S.C. § 1291.
[9] *Lipitor*, 855 F.3d at 142; *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014).
[10] *Ramsgate Court Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002).

The District Court, ruling on Siemens' motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), appropriately proceeded in the same way as for a motion to dismiss for failure to state a claim under Rule 12(b)(6).[11] As required, it accepted Krauter's well-pleaded factual allegations as true and drew all reasonable inferences in his favor.[12] Also as required, the court disregarded "threadbare recitals of the elements of standing, supported by mere conclusory statements."[13] On appeal, Krauter recaps his allegations and says that the District Court overlooked or minimized them. To the contrary, the court's opinion shows that it accurately summarized Krauter's allegations, assumed they were true, and carefully reviewed them under the controlling standard.

Krauter also asserts that the court erred in considering facts outside the complaint—namely, a declaration Siemens filed that included records of Krauter's pension payments. However, the court focused on what the complaint lacks, saying it "is devoid of any allegations of *actual* harm" because there are no "allegations that any of the . . . plans have failed to make necessary payments."[14] The deficiencies in the complaint support the ruling, regardless of Siemens' declaration. The court did not misapply the dismissal standard.

---

[11] *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

[12] *Id.*

[13] *Id.* (alterations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[14] App. 8.

B.

We address in three parts Krauter's arguments that the District Court's standing and administrative exhaustion rulings are erroneous.

1.

Counts One through Four (breach of fiduciary duty, prohibited transaction, declaratory judgment to enforce rights, and declaratory judgment to recover benefits) pertained to both the defined benefit and defined contribution plans. The District Court correctly ruled that Krauter lacked standing to assert these claims with regard to the defined benefit plans.

Standing requires: (1) "an injury in fact," which is "an 'invasion of a legally protected interest' that is 'concrete and particularized,'" (2) "a 'causal connection between the injury and the conduct complained of,'" and (3) "a likelihood 'that the injury will be redressed by a favorable decision.'"[15] The District Court concluded that Krauter did not allege a concrete injury in fact because Siemens' actions did not harm him. Instead, the complaint "simply hypothesizes that he would incur harm in the future if Sivantos' actions lead to missed payments," an injury the court ruled "merely speculative and not concrete."[16] On appeal, Krauter fails to show that these conclusions are erroneous with regard to his defined benefit plan claims.

---

[15] *Horizon*, 846 F.3d at 633 (alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[16] App. 9.

6

Krauter's first argument, that it is sufficient to allege violations of substantive ERISA enforcement provisions, runs aground on the shoals of our precedent. We have ruled that the risk of future negative effects on benefits is too speculative to confer standing.[17] This conclusion predates the Supreme Court's standing case, *Spokeo, Inc. v. Robins*,[18] but "the *Spokeo* Court meant to reiterate traditional notions of standing," and our pre-*Spokeo* cases are still good law.[19] Krauter relies on *In re Nickelodeon Consumer Privacy Litigation* and *In re Horizon Healthcare Services Data Breach Litigation*, but those cases pertained to the particular injuries the plaintiffs alleged: data privacy violations.[20] *Nickelodeon* and *Horizon* did not overrule *Perelman*'s ERISA-specific holding. Indeed, in *Horizon*, we pointed to ERISA violations of the kind alleged here as an example of what is not an injury in fact. We contrasted data privacy violations, which are injuries in fact even absent further harm, with ERISA plan management violations, which (under a Fifth Circuit case we cited approvingly) are not.[21]

Krauter's next argument, that he has pled monetary and non-monetary harms, consists of a list of his alleged injuries accompanied by his bare assertion that they are

---

[17] *Perelman v. Perelman*, 793 F.3d 368, 375 (3d Cir. 2015).

[18] 136 S. Ct. 1540 (2016).

[19] *Horizon*, 846 F.3d at 638; *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016).

[20] *Horizon*, 846 F.3d at 636 (using limiting words of "when it comes to laws that protect privacy" and "in the context of statutes protecting data privacy" (quoting *Nickelodeon*, 827 F.3d at 272-73)).

[21] *Id.* at 640 & n.21 (citing *Lee v. Verizon Commc'ns*, 837 F.3d 523, 529-30 (5th Cir. 2016)).

7

injuries in fact. However, Krauter cites no authorities supporting his view. His allegation that he would not have participated in the plans had he known Siemens might transfer them is, as Siemens points out, just another way of expressing fears about a possible future default. His allegation that Siemens breached its fiduciary duty by acting "in furtherance of its own . . . interests, and against [his] interests," lacks factual specificity and is conclusory.[22] His allegations about discontinuance of insurance and failure to fund a rabbi trust (both of which would pay benefits upon a default) are too speculative: Krauter would only be harmed by their absence if there were to be a default.

Krauter's third argument is that increased risk of future harm confers standing. Here again, our precedent is conclusive: a risk of future adverse effects on benefits is not an injury in fact.[23] Krauter's out-of-circuit cases are entirely unpersuasive. In one, the defendant discontinued the plaintiffs' health care plans—so unlike here, the feared loss of benefits actually came to pass.[24] Krauter's other case is even farther afield. It addressed standing to challenge USDA regulations aimed at preventing mad cow disease and confined its holding to the "specific context of food and drug safety suits."[25]

---

[22] App. 33; *see Iqbal*, 556 U.S. at 678 (explaining that "recitals of [legal] elements . . . supported by mere conclusory statements" do not suffice).

[23] *Perelman*, 793 F.3d at 375.

[24] *United Steelworkers v. Textron, Inc.*, No. 85-4590-MC, 1987 U.S. Dist. LEXIS 14824, at *4, 8 (D. Mass. Feb. 2, 1987).

[25] *Baur v. Veneman*, 352 F.3d 625, 627-28, 634 (2d Cir. 2003).

For all these reasons, the District Court correctly ruled that Krauter lacked standing to bring Counts One through Four insofar as they pertained to the defined benefit plans.

2.

The District Court also correctly dismissed Counts One through Four insofar as they pertained to the defined contribution plans. Therefore, we will affirm, but in part for different reasons than the District Court gave. We discuss first the Deferred Compensation Plan, where we agree that Krauter lacked standing; we discuss second the 401(k) Plan, where Krauter had standing but failed to state a claim.

Krauter alleged that after the transfer, some Deferred Compensation Plan investment options were no longer available and fees and costs were higher. Siemens is correct that Krauter did not allege any injury (*i.e.*, financial loss). The higher fees may have been accompanied by higher returns. Krauter knew how to plead injury caused by higher fees and lower returns; he did so on the same page of his complaint with reference to the 401(k) Plan. Although we draw reasonable inferences in Krauter's favor, we do not interpolate allegations that are not in the complaint. On the complaint's face, Krauter has not alleged that he was injured by the changes to the Deferred Compensation Plan. Therefore, he lacked standing to assert Counts One through Four insofar as they pertained to that Plan.

Krauter's allegations about the 401(k) Plan differ from his allegations about the

Deferred Compensation Plan. Krauter alleged that after the transfer from Siemens to Sivantos, his 401(k) funds were moved into investments that "charged considerably higher management fees" and "generated less return."[26] Diminished returns in a defined contribution plan are a concrete injury in fact.[27] Siemens argues that even so, Krauter does not have standing because, with his 401(k) funds rolled into an IRA, his injury would not be redressed by a favorable decision in this case. We have held, however, that cashed-out 401(k) participants can sue for mismanagement of plan assets.[28] In addition, Krauter alleged that the higher fees and lower returns damaged him before his rollover. For these reasons, Krauter pled concrete injury in fact with regard to Counts One through Four, insofar as those claims related to the 401(k) Plan.

The District Court ruled that, besides the lack of standing, Krauter's claims could also be dismissed because he did not plead administrative exhaustion. The parties hotly dispute whether, in fact, Krauter administratively exhausted his claims. We decline to wade into these potentially fact-intensive waters. We also decline to affirm dismissal on a "nonjurisdictional affirmative defense" such as ERISA's exhaustion requirement.[29]

---

[26] App. 29.

[27] *See Santomenno*, 768 F.3d at 292 n.2 (plaintiffs had standing to assert claim that defendant breached ERISA fiduciary duty by providing 401(k) investment options with excessively high fees; injury in fact was alleged "monetary loss . . . caused by . . . excessive fees"); *cf. Renfro v. Unisys Corp.*, 671 F.3d 314, 317-18 (3d Cir. 2011).

[28] *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296-97 (3d Cir. 2007) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)).

[29] *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 282-83 (3d Cir. 2007).

Krauter's injury in fact notwithstanding, we conclude—after plenary review of the record and the law—that he did not properly state a claim.[30] Therefore, Counts One through Four were subject to dismissal under Rule 12(b)(6) insofar as they pertained to the 401(k) Plan.

In *Renfro v. Unisys Corp.*, the plaintiffs alleged that the defendants breached their fiduciary duty under ERISA because they "inadequately selected a mix and range of [401(k)] investment options."[31] That is essentially what Krauter alleges here. As we explained in *Renfro*:

> An ERISA defined contribution plan is designed to offer participants meaningful choices about how to invest their retirement savings. Accordingly, we hold the range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured.[32]

The *Renfro* plaintiffs pleaded facts including the kinds of options available and the funds' risk and fee profiles.[33] Yet despite that specificity, we concluded that the range of investment options was "reasonable" and therefore the "plaintiffs' factual allegations . . . [did] not plausibly support their claims."[34]

---

[30] *Hassen v. Gov't of V.I.*, 861 F.3d 108, 114 (3d Cir. 2017) ("[B]ecause our review is plenary, 'we may affirm on any grounds supported by the record.'") (quoting *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 105 n.4 (3d Cir. 2015)).

[31] 671 F.3d at 318.

[32] *Id.* at 327.

[33] *Id.* at 326.

[34] *Id.* at 327.

Unlike the *Renfro* plaintiffs, Krauter did not allege what investment options were available after the transfer or what fees they charged. Nor did he allege how, specifically, the pre- and post-transfer options differed. *Renfro* provides the road map for how to plead his claims, but Krauter "provided nothing more than conclusory assertions that [the fiduciary] breached its duty to prudently and loyally select and maintain the plan's . . . investment options."[35] Thus, he failed to state a claim in Counts One through Four with regard to the 401(k) Plan.[36]

For these reasons, we will affirm the dismissal of Counts One through Four insofar as these claims related to the defined contribution plans.

3.

Having disposed of Counts One through Four, we now consider the final two counts, Count Five (failure to provide information) and Count Six (promissory estoppel). The District Court also correctly dismissed these claims for lack of standing.

_____

[35] *Id.* at 328.

[36] In *Renfro*, the plaintiffs asserted a breach of fiduciary duty claim and a claim for equitable relief, whereas here, Krauter asserted those claims plus a prohibited transaction claim. But the logic of *Renfro* applies to each of Krauter's claims. The only injuries Krauter pled with regard to the 401(k) Plan—for all of his claims—were the higher fees and diminished returns. As *Renfro* shows, he failed to properly plead the facts that would be necessary to prove those injuries. That failure dooms Counts One through Four as they pertain to the 401(k) Plan. In other words, these claims withstand dismissal under Rule 12(b)(1) for lack of standing because Krauter "allege[d] some specific, identifiable trifle of injury." *Horizon*, 846 F.3d at 633 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)). But they do not withstand dismissal under Rule 12(b)(6) because without the type of specific factual allegations discussed in *Renfro*, Krauter has failed to state a claim.

To support his promissory estoppel claim, Krauter alleged that Siemens promised to be responsible for paying his benefits, that Krauter changed his position in reliance on that promise, and that Siemens breached the promise. The allegedly breached promise did not injure Krauter because, as discussed, he does not allege that he failed to receive payments he was owed.[37]

Krauter also lacks standing on his failure to provide information claim, and his request for injunctive relief does not cure the problem. As Krauter points out, we did observe in *Perelman* that "[w]ith respect to claims for injunctive relief, [injury in fact] may exist simply by virtue of the defendant's violation of an ERISA statutory duty, such as failure to comply with disclosure requirements."[38] However, Krauter has not properly pled a violation of an ERISA statutory duty, and *Perelman* does not relieve him of the obligation to plead his claim with specificity. Krauter brings his claim under 29 U.S.C. § 1132(c), alleging that Siemens did not provide him with documents relating to the transfer. Section 1132(c) does not itself require any disclosures, though; instead, it affords a remedy for failure to provide documentation required by other ERISA provisions.[39] Krauter does not specify what provision requires Siemens to provide him

---

[37] *Lujan*, 504 U.S. at 560 (defining injury in fact as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent" (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

[38] 793 F.3d at 373.

[39] 29 U.S.C. § 1132(c) (providing that a participant may sue for failure to provide information under 29 U.S.C. §§ 1166, 1021(e)(1), 1021(f), 1025(a), or "any information which such administrator is required by this subchapter to furnish").

13

with its purchase and sale agreement with Sivantos, documents it relied on leading up to the sale, or documents demonstrating compliance with unspecified "safeguards."[40] Krauter was not injured by Siemens' decision not to provide documents that ERISA did not require it to provide.

Moreover, we also said in *Perelman* that "[c]laims demanding a monetary equitable remedy, by contrast [with claims for injunctive relief], require the plaintiff to allege an individualized financial harm."[41] Krauter's claims are substantially similar to the *Perelman* plaintiff's: that mismanagement of a defined benefit plan has left him at greater risk of future default. His demands for relief are also similar—in *Perelman*, "disgorgement or restitution,"[42] and here, "[t]hat Siemens compensate the applicable plans for losses" and "restore to the applicable plans any profits Siemens made."[43] Therefore, Krauter's efforts to distinguish *Perelman* fail.

## C.

Finally, Krauter fails to show that the District Court abused its discretion in denying leave to amend his complaint. To determine if leave has been requested properly, courts consider whether a plaintiff filed a motion to amend or provided a proposed amended complaint.[44] Where neither have been offered, a district court cannot abuse its

---

[40] App. 39.

[41] 793 F.3d at 373.

[42] *Id.* at 372.

[43] App. 33-37.

[44] *Ramsgate*, 313 F.3d at 161.

discretion, having "had nothing upon which to exercise [that] discretion."[45] Krauter mentioned amendment only in passing, using language and form paralleling requests we have deemed insufficient in the past. He made three cursory references in his opposition to the motion to dismiss, stating that if Siemens was correct, he should be granted leave to amend. That he repeated his request is not determinative, as it still "lack[ed] a statement [of] the grounds for amendment and . . . did not rise to the level of a motion."[46] "Because a motion for leave to amend was never properly before it, the [D]istrict [C]ourt did not abuse its discretion in failing to address [Krauter's] request for leave to cure deficiencies in [his complaint]."[47]

## IV.

For the reasons set forth above, we will affirm.

---

[45] *Id.*

[46] *Id.* (quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)).

[47] *Id.* (quoting *Calderon*, 181 F.3d at 1187).