PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2447
_____

MARK RENFRO; GERALD LUSTIG,
AS REPRESENTATIVES OF A CLASS OF SIMILARLY
SITUATED PERSONS, AND ON BEHALF OF THE PLAN

v.

UNISYS CORPORATION;
UNISYS CORPORATION EMPLOYEE
BENEFIT ADMINISTRATIVE COMMITTEE;
UNISYS CORPORATION SAVINGS PLAN MANAGER;
PENSION INVESTMENT REVIEW COMMITTEE;
FIDELITY MANAGEMENT TRUST COMPANY;
FIDELITY MANAGEMENT AND
RESEARCH COMPANY;
FIDELITY INVESTMENTS INSTITUTIONAL
OPERATIONS COMPANY, INC;
J.P. BOLDUC; MATTHEW J. ESPE; GAIL D. FOSLER;
RANDALL J. HOGAN; CLAYTON M. JONES;
CLAY B. LIFLANDER; THEODORE E. MARTIN;
CHARLES B. McQUADE; FMR LLC

Mark Renfro; Gerald Lustig,
                                    Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 07-cv-02098
(Honorable Berle M. Schiller)
_____

Argued March 7, 2011

Before: SCIRICA, AMBRO and VANASKIE,
*Circuit Judges*.

(Filed: August 19, 2011)

MICHAEL A. WOLFF, ESQUIRE (ARGUED)
JEROME J. SCHLICHTER, ESQUIRE
Schlichter Bogard & Denton LLP
100 South 4th Street, Suite 900
St. Louis, Missouri 63102
        Attorneys for Appellants

LOUISE M. BETTS, ESQUIRE (ARGUED)
ELIZABETH HOPKINS, ESQUIRE
United States Department of Labor
200 Constitution Avenue, N.W., Room N4611
Washington, D.C. 20210
        Attorneys for *Amicus Curiae*-Appellant,
        The Secretary of Labor, Hilda L. Solis

CLAIRE PRESTEL, ESQUIRE
Public Justice, P.C.
1825 K Street, N.W., Suite 200

Washington, D.C. 20006

      Attorney for *Amicus Curiae*-Appellant,
      Public Justice

JAY E. SUSHELSKY, ESQUIRE
AARP Foundation Litigation
601 E Street, N.W., Room B4-250
Washington, D.C. 20049

      Attorney for *Amicus Curiae*-Appellant,
      AARP

GREGORY Y. PORTER, ESQUIRE
Bailey & Glasser LLP
910 17th Street, N.W., Suite 800
Washington, D.C. 20006

      Attorney for *Amici Curiae*-Appellants,
      Richard Kopcke and Francis Vitagliano

BRIAN T. ORTELERE, ESQUIRE (ARGUED)
JOSEPH J. COSTELLO, ESQUIRE
AZEEZ HAYNE, ESQUIRE
MELISSA D. HILL, ESQUIRE
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

JOSEPH A. TEKLITS, ESQUIRE
Unisys Corporation
801 Lakeview Drive, Suite 100
Blue Bell, Pennsylvania 19422

      Attorneys for Appellees,
      Unisys Corporation, Unisys Corporation
      Employee Benefit Administrative Committee,

Unisys Corporation Savings Plan Manager,
Pension Investment Review Committee,
J.P. Bolduc, Matthew J. Espe, Gail D. Fosler,
Randall J. Hogan, Clayton M. Jones,
Clay B. Liflander, Theodore E. Martin,
Charles B. McQuade

JONATHAN D. HACKER, ESQUIRE (ARGUED)
MEAGHAN McLAINE VERGOW, ESQUIRE
O'Melveny & Myers LLP
1625 Eye Street N.W.
Washington, D.C. 20006

JOHN S. SUMMERS, ESQUIRE
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
18th & Cherry Streets
Philadelphia, Pennsylvania 19103
        Attorneys for Appellees,
        Fidelity Management Trust Company,
        Fidelity Management and Research Company,
        Fidelity Investments Institutional Operations
        Company Inc., FMR LLC

THOMAS L. CUBBAGE III, ESQUIRE
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
        Attorney for *Amicus Curiae*-Appellee,
        The Investment Company Institute

NANCY G. ROSS, ESQUIRE
McDermott Will & Emery LLP

4

227 West Monroe Street
Chicago, Illinois 60606
    Attorney for *Amicus Curiae*-Appellee,
    Securities Industry and Financial Markets Association

HOWARD SHAPIRO, ESQUIRE
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
    Attorney for *Amicus Curiae*-Appellee,
    The Chamber of Commerce of the
    United States of America

————————————

OPINION OF THE COURT

————————————

SCIRICA, *Circuit Judge*.

Plaintiffs Mark Renfro and Gerald Lustig, representatives of a putative class of participants in a 401(k) defined contribution plan, sued defendants Unisys Corp. and Fidelity Management Trust Co. and its related corporate entities under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, for breach of fiduciary duty. Plaintiffs alleged defendants inadequately selected a mix and range of investment options to include in the plan. The District Court dismissed the Fidelity entities, holding they were not fiduciaries with reference to the challenged conduct, dismissed the action holding plaintiffs' claims were implausible because the plan's mix and range of options was reasonable, and, in the alternative, granted Unisys's summary judgment motion holding the ERISA safe-

harbor provisions exempted it from liability. We will affirm the dismissal of the Fidelity entities and the dismissal of the action. We will not reach the grant of summary judgment.

## I.

### A.

The Unisys Corporation Savings Plan is a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34), which is tax qualified under 26 U.S.C. § 401(k). "[A] 'defined contribution plan' . . . promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 250 n.1 (2008). These plans "dominate the retirement plan scene today." *Id.* at 255.

The Unisys plan consists of several investment options (seventy-three as of the filing of the complaint) into which non-union Unisys employees may allocate contributions. An employee-participant may contribute up to 30%, but no more than $15,000 per year, of his or her pre-tax wages into the plan. Unisys then matches half of the participant's contribution, capped at 2% of the participant's wages, which it invests in the Unisys Stock Fund. Participants are fully vested in their accounts.

Of the seventy-three options included in the plan, participants could invest in either of a stable value fund or the Unisys Stock Fund, or one of seventy-one options provided under trust agreement with Fidelity. Of the seventy-one options provided by Fidelity, four were commingled pools.

6

Commingled pools consist of funds commingled from different sources owning shares in the pool. They are part of a group trust owned by a bank. Of the commingled pools included in the Unisys plan, one commingled pool invested in an S&P 500 index, and three commingled pools invested in bonds.

The remaining sixty-seven investment options were mutual funds. "'A mutual fund is a pool of assets, consisting primarily of [a] portfolio [of] securities, and belonging to the individual investors holding shares in the fund.'" *Jones v. Harris Assocs. L.P.*, --- U.S. ----, 130 S. Ct. 1418, 1422 (2010) (alterations in original) (quoting *Burks v. Lasker*, 441 U.S. 471, 480 (1979)). Mutual funds are organized as investment companies, which are governed by the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq. See Jones*, 130 S. Ct. at 1422. Accordingly, they are subject to a variety of reporting, governance, and transparency requirements that do not apply to other investment vehicles such as commingled pools.

The Unisys plan's mutual funds were added in 1993 by way of a trust agreement with Fidelity. Fidelity, as a directed trustee of the plan, agreed to provide administrative services bundled with the investment options. In return, Unisys agreed that any additions to the funds to be managed by Fidelity would be Fidelity funds. The agreement did not prohibit Unisys from adding non-Fidelity options to its plan, and administering them itself, or from contracting with another company to administer non-Fidelity investments. In fact, in its recitals, the trust agreement stated certain investments were to be held in trust and administered by CoreStates, a trustee unaffiliated with Fidelity.

7

Each mutual fund included in the plan incurred fees for investment management. These fees are set for each mutual fund in an expense ratio—a percentage of each contributor's assets invested in a particular fund. The plan had a wide variety of risk and expense ratios; the expense ratios on the funds included in the Unisys plan ranged from 0.1% to 1.21%. *Renfro v. Unisys Corp.*, No. 07-2098, 2010 U.S. Dist. LEXIS 41563, at *7 n.2 (E.D. Pa. April 26, 2010) (taking judicial notice of the fees because they were disclosed in prospectuses filed with the Securities and Exchange Commission). These fees pay for, among other things, management of the investments and compliance with securities laws. All fees were disclosed in materials distributed to the participants.[1] Regardless of these fees, the Unisys plan participants appear to strongly prefer mutual fund investments. As of the filing of the complaint, nearly $1.9 billion of the plan's roughly $2 billion worth of assets were invested in these mutual funds.

**B.**

Plaintiffs sued Unisys and the Fidelity entities in the United States District Court in the Central District of California alleging breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1132(a)(2), and for equitable relief under § 1132(a)(3) relating to defendants' selection for inclusion and maintenance of investment options in the Unisys plan. The case was transferred to the Eastern District of Pennsylvania.

---

[1]Plaintiffs do not contest that the plan documents distributed to participants contained accurate information about all the investment options. Nor do plaintiffs dispute that Unisys provided information services to furnish participants with additional information about investment options upon request.

8

While the case was pending, the Supreme Court issued its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Aschroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937 (2009), addressing pleading standards. Plaintiffs sought and were granted leave to file an amended complaint and a second amended complaint, which was filed on September 3, 2009.[2]

In the complaint, plaintiffs allege that Unisys and the Fidelity entities breached their duties of loyalty and prudence by selecting and retaining retail mutual funds in the range of investment options. Specifically, plaintiffs contend the administrative fees governed by the trust agreement, and the fees associated with each retail mutual fund, are excessive in light of the services rendered as compared to other, less expensive, investment options not included in the plan. These allegations focus on the inclusion of so-called retail mutual funds, which are available to individual investors with small investments as well as to large ERISA funds such as Unisys's. Plaintiffs allege Unisys could have selected investments having lower fees than mutual funds and/or used the size of its plan as leverage to bargain for lower fee rates on mutual funds.

Both the Fidelity entities and Unisys moved to dismiss under Fed. R. Civ. P. 12(b)(6). *See Renfro*, 2010 U.S. Dist. LEXIS 41563, at *3. The Fidelity entities contended they were not fiduciaries with respect to the challenged conduct and, relying on the Seventh Circuit's decision in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *supplemented by* 569 F.3d 708 (7th Cir. 2009), that plaintiffs had failed to plead a plausible breach of fiduciary duty. In addition, the

---

[2]For ease of reference, we refer to the Second Amended Complaint simply as "the complaint."

9

Fidelity entities argued plaintiffs' claims were barred by ERISA's six-year limitation period. 29 U.S.C. § 1113. Unisys similarly argued plaintiffs did not adequately plead a breach of fiduciary duty. In the alternative, Unisys moved for summary judgment under Fed. R. Civ. P. 56(c), contending ERISA's safe harbor provision, 29 U.S.C. § 1104(c)(1)(A)(ii), shielded it from liability because the alleged losses were the aggregate result of the participants' own investment decisions.

The District Court denied the statute of limitations motion on the ground that ERISA fiduciary breaches are continuing violations that accrue each time a plan incurs a loss as a result of a breach. But the court granted the Fidelity entities' motion to dismiss, concluding as a matter of law under the trust agreement that Fidelity and its related corporate entities were not fiduciaries with respect to the challenged conduct because they did not exercise control over the inclusion of investment options in the plan. *Renfro*, 2010 U.S. Dist. LEXIS 41563, at \*15-19. The court also granted the defendants' motion to dismiss on the grounds the complaint failed to state a claim because the plan "'offered a sufficient mix of investments for their participants' [such] that no rational trier of fact could find, on the basis of the facts alleged in the operative complaint, that the Unisys defendants breached an ERISA fiduciary duty by offering this particular array of investment vehicles." *Id.* at \*19 (quoting *Hecker*, 556 F.3d at 586.). In the alternative, the court granted Unisys's motion for summary judgment, finding ERISA section 404(c) shielded Unisys from liability for any alleged breach because the participants chose the investment options into which they allocated their contributions. *Id.* at \*31.

10

Plaintiffs timely appealed.

## II.[3]

## A.

Our review of a Rule 12(b)(6) motion to dismiss is plenary. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). Rule 12(b)(6) permits dismissal of complaints for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The question is "not whether [plaintiffs] will ultimately prevail . . . but whether [their] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, --- U.S. ----, 131 S. Ct. 1289, 1296 (2011) (internal citations and quotations omitted). "Because Federal Rule of Civil Procedure 8(a)(2) 'requires a "showing", rather than a blanket assertion, of entitlement to relief,' courts evaluating the viability of a complaint under Rule 12(b)(6) must look beyond conclusory statements and determine whether the complaint's well-pled factual allegations, taken as true, are 'enough to raise a right to relief above the speculative level.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555 & n.3). But plaintiffs "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ----, 131 S. Ct. 1309, 1322 n.12 (2011) (quoting *Twombly*, 550 U.S. at 570). Accordingly, we must examine the context of a claim, including the underlying substantive law, in order to assess its plausibility. *See Ins. Brokerage*, 618 F.3d at 320 n.18.

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction under 28 U.S.C. § 1291.

**B.**

**1.**

ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (internal quotation omitted). In enacting ERISA, Congress "resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs." *Id.* at 262. Because "Congress did not require employers to establish benefit plans in the first place . . . ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Conkright v. Frommert*, --- U.S. ----, 130 S. Ct. 1640, 1648-49 (2010) (internal quotations and citations omitted). Accordingly, Congress sought to "induc[e] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). To that end, ERISA authorizes six distinct civil actions that may be brought by various parties under delineated circumstances, including actions by plan participants to remedy a breach of fiduciary duty. *See LaRue*, 552 U.S. at 253.

**2.**

ERISA requires each plan to have one or more named fiduciaries that are granted the authority to manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(1). But by ERISA's definition:

a person is a fiduciary with respect to a plan to the extent

**(i)** he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

**(ii)** he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

**(iii)** he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105 (c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, *see id.*; *In re Unisys Corp. Retiree Med. Benefits ERISA Litig. (Unisys III)*, 579 F.3d 220, 228 (3d Cir. 2009), we "must ask whether [the entity] is a fiduciary with respect to the particular activity in question," *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (internal quotation omitted). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

**3.**

ERISA imposes statutory duties on fiduciaries that "'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *LaRue*, 552 U.S. at 253 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)). Accordingly, an ERISA fiduciary is required to:

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> **(A)** for the exclusive purpose of:
> **(i)** providing benefits to participants and their beneficiaries; and
> **(ii)** defraying reasonable expenses of administering the plan;
> **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A)-(B).

The fiduciary standard "is flexible, such that the adequacy of a fiduciary's independent investigation and ultimate investment selection is evaluated in light of the character and aims of the particular type of plan he serves." *In re Unisys Sav. Plan Litig.* (*Unisys I*), 74 F.3d 420, 434 (3d Cir. 1996) (internal quotation omitted). And an ERISA fiduciary acts prudently when it gives "appropriate

14

consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the . . . investment course of action involved . . . ." 29 C.F.R. § 2550.404a-1(b)(1)(i). Accordingly, in evaluating a questioned decision, we have focused on a fiduciary's "conduct in arriving at [that] investment decision." *Unisys I*, 74 F.3d at 434. But we have also approved of an approach examining whether a questioned decision led to objectively prudent investments. *See In re Unisys Sav. Plan Litig.* (*Unisys II*), 173 F.3d 145, 153-54 (3d Cir. 1999) (approving of the "hypothetical prudent investor" test); *see also Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994) ("Even if a trustee failed to conduct an investigation before making a decision, he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway."); *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 962 (D.C. Cir. 1985) (Scalia, J., concurring in part and dissenting in part) (contending a fiduciary should not be liable for damages when, regardless of its failure to investigate beforehand, it made or held objectively prudent investments).

### III.

We first turn to the dismissal of the Fidelity defendants. Fidelity concedes it was a fiduciary under the plan because it was a directed trustee with respect to certain assets and administrative functions. But the parties contest whether Fidelity and its related corporate entities were fiduciaries with respect to the challenged conduct of selecting and retaining investment options in the Unisys plan. Plaintiffs proceed under three theories to assert that Fidelity and its related corporate entities were fiduciaries with reference to the challenged conduct, or otherwise could be

15

liable for restitution.

**A.**

Plaintiffs contend that Fidelity, by virtue of its role as a directed trustee, functioned as a fiduciary with reference to the claimed breach. As noted, ERISA requires every plan to have one or more named fiduciaries. 29 U.S.C. § 1102(a)(1). ERISA also requires plan assets to be held in trust. *Id.* § 1103(a). A directed trustee, such as Fidelity, is a fiduciary "subject to proper directions" of one of the plan's named fiduciaries. *See id.* § 1103(a)(1).

The trust agreement appointing Fidelity as a directed trustee limited Fidelity's role to "hold and invest . . . plan assets in trust among several investment options selected by the Applicable Fiduciary," and to "perform recordkeeping and administrative services for the Plan if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to [Fidelity] by the Administrator."[4] The agreement expressly disclaimed any role for Fidelity in selecting investment options, stating, "[Fidelity entities] shall have no responsibility for the selection of investment options under the Trust," Instead, the agreement required that Fidelity be explicitly "direct[ed] . . . as to what investment options . . . Plan participants may invest in." Fidelity's limited role as a directed trustee, delineated in the trust agreement, does not encompass the activities alleged as a breach of fiduciary duty—the selection and maintenance of the mix and range of investment options included in the plan.

---

[4] We review interpretations of a trust agreement *de novo*. *Ulmer v. Harsco Corp.*, 884 F.2d 98, 101-02 (3d Cir. 1989).

16

As we have explained, a directed trustee is essentially "immune from judicial inquiry" because it lacks discretion, taking instructions from the plan that it is required to follow. *See Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).

Contrary to plaintiffs' assertion, the agreement's unambiguous amendment provisions do not undermine this allocation of authority. Section 5(b) of the trust agreement allows for amendment of the investment options included in the trust agreement by mutual agreement of the parties. Fidelity entities were required to give their consent in order for funds to be added to the group of plan investments it administers. This provision extends Fidelity's control only over which investments were to be administered by Fidelity and not over which investments were selected for inclusion in the plan as a whole. Unisys remained free to add non-Fidelity investments to the Unisys plan and to administer such investments itself or contract that function to another party. In fact, the trust agreement's recitals state Unisys intended to add other investments to a trust to be managed by CoreStates. Fidelity had no contractual authority to control the mix and range of investment options, to veto Unisys's selections, or to constrain Unisys from including other investment options in the plan administered by an entity other than Fidelity. It therefore did not a function as a fiduciary with respect to selecting and maintaining the range of investment options in the plan. Accordingly, Fidelity's status as a directed trustee does not subject it to liability for these activities.

**B.**

Plaintiffs also contend Fidelity is liable for any breach by Unisys as a co-fiduciary under 29 U.S.C. § 1105(a). This section provides:

17

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

**(1)** if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

**(2)** if, by his failure to comply with section 1104 (a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

**(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

As noted, Fidelity is a directed trustee of the plan owing fiduciary duties with respect to the limited authority and discretion it exercises. At the outset, we note a party "does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms." *Hecker*, 556 F.3d at 583; *see also Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007). "When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him.

Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987). Plaintiffs allege Unisys selected investment options with excessive fees caused by a fee structure negotiated between Unisys and Fidelity for included mutual funds. Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation by Unisys. Moreover, Fidelity was not yet a plan fiduciary at the time it negotiated the fee compensation with Unisys.

Even assuming Fidelity's subsequent assumption of the role of directed trustee could subject it to co-fiduciary liability for a breach by Unisys relating to the mix and range of investment options in the plan, including risk and fee profiles, sections 1105(a)(1) and (3) require actual knowledge of the breach.[5] "'Under this rule, the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach.'" *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) (quoting H.R. Rep. No. 1280). Plaintiffs' claims fail because they do

---

[5] Section 1105(a)(2) does not provide a remedy for plaintiffs. Under that section, as a predicate to liability, plaintiffs must first plausibly allege Fidelity breached fiduciary duties it owed in its role as a directed trustee. Plaintiffs have not alleged any breach by Fidelity of its fiduciary duties regarding its disposition of assets or administration of the plan as a directed trustee. The complaint is directed exclusively at the selection and maintenance of investment options, which, as discussed above, fall outside of the scope of Fidelity's fiduciary duty.

not contend Fidelity had knowledge about Unisys's allegedly flawed decision-making process regarding investment options to be included in the plan. In fact, by contending that Fidelity failed adequately to review the plan's fees in light of the size of the plan's assets, plaintiffs effectively concede Fidelity did not possess actual knowledge of Unisys's alleged breach. *See* Second Am. Compl. ¶¶ 75(B), 80B-C. Similarly, plaintiffs do not allege Fidelity knew Unisys's selection of investment options constituted a breach of fiduciary duty. Accordingly, plaintiffs fail to state a claim against Fidelity under § 1105(a).

## C.

Finally, plaintiffs contend the Fidelity entities are liable for restitution under 29 U.S.C. § 1132(a)(3), which provides a civil action may be brought:

> by a participant, beneficiary, or fiduciary
> **(A)** to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> **(B)** to obtain other appropriate equitable relief
> **(i)** to redress such violations or
> **(ii)** to enforce any provisions of this subchapter or the terms of the plan.

We have held this provision authorizes direct suits against fiduciaries for breach of their duty. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1293-94 (3d Cir. 1993). But two years after *Bixler*, in *Reich v. Compton*, 57 F.3d 270, 284 (3d Cir. 1995), we examined whether the Secretary of Labor could bring suit under 29 U.S.C. §1132(a)(5) against nonfiduciaries alleged to have participated in a breach of fiduciary duty. We noted the

20

Supreme Court's dictum in *Mertens*, 508 U.S. at 260, expressed "considerable doubt that [29 U.S.C. § 1132(a)(3)] authorizes suits against nonfiduciaries who participate in fiduciary breaches." *Reich*, 57 F.3d at 282. Finding this dictum persuasive and noting that "the language shared by [sections 1132(a)(3) and 1132(a)(5)] 'should be deemed to have the same meaning,'" *id.* at 284 (quoting *Mertens*, 508 U.S. at 260), we held that the Secretary of Labor could not bring suit under § 1132(a)(5) against "nonfiduciaries charged solely with participating in a fiduciary breach,"[6] *id.*

In light of *Reich*, and interpreting identical language, we find *Mertens* persuasive and hold that 29 U.S.C. § 1132(a)(3) does not authorize suit against "nonfiduciaries charged solely with participating in a fiduciary breach." *Reich*, 57 F.3d at 284. Because, as previously discussed, the Fidelity entities did not act as fiduciaries with respect to the alleged breach, they may not be sued under this section for acts taken in a nonfiduciary role.

Accordingly, we will affirm the District Court's dismissal of the complaint against the Fidelity defendants.

## IV.

As for the claims against Unisys, it appears to concede

---

[6] In *Reich*, we found that the same section authorized suits for nonfiduciary participation by parties in interest to transactions prohibited under ERISA. 57 F.3d at 287; *accord Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241 (2000). In this case, plaintiffs do not appear to contend the Fidelity entities were parties in interest to a prohibited transaction.

it is a fiduciary with respect to the selection and maintenance of the plan's mix and range of investment options. But the parties contest whether, given the composition of the mix and range, plaintiffs have plausibly pleaded a breach of fiduciary duty.

## A.

### 1.

In this case, the putative class frames its complaint as a challenge against the selection and periodic evaluation of the Unisys defined contribution plan's mix and range of investment options. Plaintiffs do not challenge the prudence of the inclusion of any particular investment option. Specifically, plaintiffs take issue with the inclusion of an array of Fidelity retail mutual funds—funds that are available on the same terms to individual investors in the open market. Plaintiffs also allege the fees on the mutual fund options are excessive in comparison to the services rendered, both as compared to other mutual funds and to other types of investments Unisys could have selected for inclusion in the plan. Within this rubric, plaintiffs point to the structure of Fidelity's fee compensation on the mutual funds, which is in part calculated as a percentage of the total assets in the funds. Plaintiffs contend the services required to administer mutual funds do not vary based on the aggregate amount of assets in the funds. Rather, they contend fees should be calculated on a per-participant basis. In addition, because the plan includes only a few other investment vehicles such as commingled funds and company stock, plaintiffs argue this plausibly demonstrates Unisys breached its fiduciary duties in composing the mix and range of investment options included

22

in the plan.[7]  In sum, plaintiffs challenge the 401(k) plan as a whole, alleging Unisys inadequately investigated and selected investment options into which plan participants could choose to allocate their contributions.

**2.**

Two sister circuits have evaluated similar complaints at the motion to dismiss stage.  *See Hecker*, 556 F.3d 575; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009).  *Hecker* and *Braden* share a similar analytical framework for evaluating an ERISA breach of fiduciary duty claim targeting the selection and maintenance of a mix and range of investment options in a 401(k) defined contribution plan.  Both courts looked first to the characteristics of the mix and range of options and then evaluated the plausibility of claims challenging fund selection against the backdrop of the reasonableness of the mix and range of investment options. *See Hecker*, 556 F.3d at 586 ("In our view, the undisputed facts leave no room for doubt that the Deere Plans offered a sufficient mix of investments for their participants.  Thus, . . . no rational trier of fact could find, on the basis of the facts alleged in th[e] Complaint, that Deere failed to satisfy [the duty to furnish an acceptable array of investment vehicles]."); *Braden*, 588 F.3d at 596 ("[T]he complaint's allegations can

---

[7] In addition, plaintiffs allege for the first time on appeal that Fidelity impermissibly distributed fee revenues among its corporate affiliates.  As discussed, plaintiffs did challenge the mutual fund fee structure in the complaint, *see* Second Am. Compl. ¶¶ 42-43, but they did not challenge Fidelity's internal distribution of fees.  Accordingly, this issue is waived. *See Srein*, 323 F.3d at 224 n.8; *Gordon v. Wawa, Inc.*, 388 F.3d 78, 84 (3d Cir. 2004).

be understood to assert that the Plan includes a relatively limited menu of funds which were selected by Wal-Mart executives despite the ready availability of better options. The complaint alleges, moreover, that these options were chosen to benefit the trustee at the expense of the participants.").

In *Hecker*, the Seventh Circuit examined a plan containing twenty-three Fidelity mutual funds, two investment funds also managed by Fidelity, a fund of Deere stock, as well as access to a brokerage window granting access to 2500 other funds managed by a variety of companies. *See* 556 F.3d at 578. Plaintiffs alleged the fees were excessive because most of the plan's options were retail mutual funds. *Id*. at 579. The fee ratios ranged from .07% to just over 1%. *Id.* at 586. The Seventh Circuit affirmed the district court's dismissal of the claim, reasoning the mix and range of options was sufficient to fulfill any fiduciary duty Deere had to "furnish an acceptable array of investment vehicles." *See id*. The court found it implausible that the decision-making process was undertaken imprudently and held that plaintiffs failed to state a breach of fiduciary duty claim.

Conversely, in *Braden*, the Eighth Circuit examined a plan containing ten retail mutual funds, a collective trust, Wal-Mart stock, and a stable value fund. *See* 588 F.3d at 589. Plaintiffs alleged breaches of fiduciary duties surrounding the fees on the funds, including allegations of a hidden kickback scheme between Merrill Lynch, a fiduciary, and the included funds. *See id.* at 590. Taking the same approach as *Hecker*, but arriving at a different conclusion, the *Braden* court evaluated the complaint's allegations, including the kickback scheme, in light of a plan that had far fewer

24

available investment options than the plan in *Hecke*r. *See id.* at 596 n.6 ("The far narrower range of investment options available in this case makes more plausible the claim that this Plan was imprudently managed.").

We agree with our sister circuits' approach to evaluating these claims. An ERISA defined contribution plan is designed to offer participants meaningful choices about how to invest their retirement savings. Accordingly, we hold the range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured.

**3.**

Looking—as plaintiffs urge—at the Unisys plan as a whole in the context of plaintiffs' allegations, we are unable "to infer from what is alleged that the process was flawed." *Braden*, 588 F.3d at 596. The Unisys plan contains a variety of investment options including company stock, commingled funds, and mutual funds. As of the filing of the second amended complaint, the plan contained seventy-three distinct investment options. Among the retail mutual funds specifically targeted in the complaint were funds with a variety of risk and fee profiles, including low-risk and low-fee options. This range of selections is much closer to the characteristics of the plan evaluated by the *Hecker* court than to the scanty mix and range of selections in the plan reviewed by the *Braden* court.

In light of the reasonable mix and range of investment options in the Unisys plan, plaintiffs' factual allegations about Unisys's conduct do not plausibly support their claims. Unlike the pleadings in *Braden*, plaintiffs have not contended there was any sort of concealed kickback scheme relating to fee payments made to the directed trustee as the quid pro quo for inclusion of particular unaffiliated mutual funds. Their allegations concerning fees are directed exclusively to the fee structure and are limited to contentions that Unisys should have paid per-participant fees rather than fees based on a percentage of assets in the plan.

Evaluating plaintiffs' complaint in light of an ERISA defined contribution 401(k) plan having a reasonable range of investment options with a variety of risk profiles and fee rates, we believe plaintiffs have provided nothing more than conclusory assertions that Unisys breached its duty to prudently and loyally select and maintain the plan's mix and range of investment options. Accordingly, evaluating the plan as a whole in light of plaintiffs' general allegations of imprudence and disloyalty in the selection and inclusion of funds, we do not believe plaintiffs have plausibly alleged a breach of fiduciary duty. We will affirm the District Court's dismissal of the complaint for failure to state a claim of breach of fiduciary duty.

## V.

The District Court also granted Unisys's summary judgment motion, holding in the alternative that even if Unisys breached its fiduciary duties in its selection and maintenance of the range and mix of investment options in its ERISA 401(k) plan, Unisys was shielded from liability by 29 U.S.C. § 1104(c), ERISA's safe harbor provision. The

26

provision reads in part:

> **(A)** In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)—
>
> . . . .
>
> **(ii)** no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control
>
> . . . .

29 U.S.C. § 1104(c)(1)(A).

In *Unisys I,* we held "[t]here is nothing in Section 1104(c)['s plain language] which suggests that a breach on the part of a fiduciary bars it from asserting section 1104(c)'s application. . . . [T]he statute's unqualified instruction that a fiduciary is excused from liability for 'any loss' which 'results from [a] participant's or [a] beneficiary's exercise of control' clearly indicates that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated."[8]   74 F.3d at 445 (footnote

_____

[8] We found the term "control" in § 1104(c)(1)(A) to be ambiguous as to "whether [a plan] fall[s] within the statute's coverage." *Unisys I*, 74 F.3d at 446.  We acknowledged that the Department of Labor was charged by Congress to issue regulations about which plans would qualify for the defense,

27

omitted). We went on to explain that "[t]his requisite causal connection is, in our view, established with proof that a participant's or a beneficiary's control was a cause-in-fact, as well as a substantial contributing factor in bringing about the loss incurred." *Id.*

Plaintiffs, supported by the Secretary of Labor as amicus curiae, maintain we must give *Chevron* deference to the Secretary's current position that "section 404(c) does not give fiduciaries a defense to liability for their own imprudence in the selection or monitoring of investment options available under the plan." Br. of the Sec'y of Labor in Supp. of Pls. at 22. Conversely, defendants maintain *Unisys I*'s holding that the statute unambiguously exempts a fiduciary from liability for any loss caused by a participant's exercise of control forecloses plaintiffs' arguments. Because the District Court properly dismissed the complaint, we refrain from deciding whether Unisys was entitled to summary judgment on this defense.

---

*id.* at 444 n.21, but we explained that because the regulations were not in effect when the challenged transactions occurred, they did not guide our analysis, *id.* Accordingly, we examined the legislative history of the statute and the common law of trusts to ascertain whether the plans at issue were eligible for safe harbor protection. *Id.* at 444-46. Consequently, because we found this to be a fact-bound issue on which Unisys had not met its burden, we denied summary judgment and remanded for consideration in light of our analysis. *Id.* at 446-47.

28

## VI.

Accordingly, for the foregoing reasons, we will affirm the judgment of the District Court.