**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3497
_____

NICHOLAS DANZA, individually and on behalf of defined contribution plans that used
Defendants as their qualified domestic relations order service provider and all similarly
situated beneficiaries of such ERISA-covered employee benefit plans,
Appellant

v.

FIDELITY MANAGEMENT TRUST COMPANY; FIDELITY INVESTMENTS
INSTITUTIONAL OPERATIONS COMPANY INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 1-11-cv-02893)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 16, 2013
_____

Before: RENDELL, SMITH, and SHWARTZ, Circuit Judges

(Opinion Filed:   July 29, 2013)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

**I.    INTRODUCTION**

Plaintiff Nicholas Danza brought suit on behalf of himself and other similarly situated beneficiaries of employee benefit plans against Defendants Fidelity Management Trust Company and Fidelity Investments Institutional Operations Company (collectively, "Fidelity") alleging that they violated various provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), by charging participants an excessive service fee for reviewing Domestic Relations Orders ("DROs"). Plaintiff argues that the District Court erred in granting Defendants' motion to dismiss. For the reasons set forth below, we will affirm.

## II. FACTS AND PROCEDURAL HISTORY

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. Plaintiff was a participant in a 401(k) retirement plan sponsored by his employer, the Great Atlantic & Pacific Tea Company, Inc. ("A&P"). In 2008, A&P and Fidelity entered into a Trust Agreement under which Fidelity agreed to provide recordkeeping and administrative services for the Great Atlantic & Pacific Tea Company, Inc. Savings Plan ("A&P Plan"), which included the review of DROs for compliance with ERISA and the members' plan.[1] Schedule B of the Trust Agreement

---

[1] Generally, a 401(k) plan participant may not assign his or her plan retirement savings to another person, but ERISA provides an exception in cases of divorce as long as the assignment is made by a DRO that satisfies specific statutory and plan requirements. See 29 U.S.C. § 1056(d)(1), (3). Plan administrators must review DROs to ensure that they satisfy these requirements. Some plan administrators hire service providers to perform this compliance review. Pursuant to the agreement here, A&P hired Fidelity as a service provider to configure an online method to create a qualified DRO, develop administrative guidelines for determining whether a DRO is qualified, respond to inquiries, and review DROs to determine if they comply with Section 414(p) of the Internal Revenue Code.

listed the fees that Fidelity would charge for its services, including the following fixed fees for DRO services to be paid by plan participants:

> • $300 for the web review of a defined contribution Order generated on the [Fidelity] Web site and not materially altered.
> • $1,200 for the manual review of one defined contribution plan mentioned in [a DRO] . . . [that] was not generated on the [Fidelity] Web site or was generated on the Web site, but materially altered.
> • $1,800 for the manual review of a combination of any two or more defined contribution plans mentioned in [a DRO] . . . [that] was not generated on the [Fidelity] Web site or was generated on the Web site, but materially altered.

App. 192. Plaintiff did not use a DRO generated on the Fidelity website. Rather, he submitted a DRO that an outside firm had prepared. Pursuant to the Trust Agreement, he was charged $1,200 for its review. Plaintiff claims the fee is unreasonable and violates ERISA. His eight-count complaint alleges breach of fiduciary duty under ERISA Section 404(a) (Count I), breach of fiduciary duty by a co-fiduciary under ERISA Section 405(a) (Counts II-III), and participation in prohibited transactions under ERISA Sections 406(a) and (b) (Counts IV-VIII). The District Court granted Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. This appeal followed.

### III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review of an order granting a motion to dismiss and apply the same standard as the District Court. See Santomenno v. John Hancock Life Ins. Co., 677 F.3d 178, 182 (3d Cir. 2012). When considering a motion to dismiss, we must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to

3

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content[, which is assumed to be true,] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## IV.  DISCUSSION

Plaintiff asserts that Fidelity violated ERISA by entering into an agreement to charge allegedly excessive fees and for collecting such fees. Thus, to determine if Plaintiff properly alleges violations of ERISA, Fidelity's conduct must be examined at two points: when it was negotiating for the fees and when it was collecting the fees.

### A.  Breach of Fiduciary Duty

Plaintiff asserts a claim under ERISA Section 404(a), which prohibits breaches of fiduciary duty by plan fiduciaries. Under ERISA Section 3(21)(A), "a person is a fiduciary with respect to a plan to the extent . . . [he] exercises any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Under Section 404(a), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . defraying reasonable expenses of administering the plan . . . ." 29 U.S.C. § 1104(a)(1)(A)(ii). Section 404 in essence codifies a common law fiduciary's general duty of loyalty—the duty of a trustee to administer the trust solely in the interest of the beneficiaries. See Pegram v. Herdrich, 530 U.S. 211, 224 (2000); In re Unisys

4

Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 227-228 (3d Cir. 2009). A person or entity may be deemed a fiduciary for certain purposes but not others. Thus, in the case of service providers, like Fidelity in this case, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram, 530 U.S. at 225, 226.

Our decision in Renfro v. Unisys Corp., 671 F.3d 314 (3d Cir. 2011), provides an example. In Renfro, a plaintiff claimed that a fiduciary breached its duty by allegedly charging unreasonably high fees for its services managing investments in mutual funds that were available to plan participants. Id. at 318-19. Although the Renfro defendant was a fiduciary for some purposes—i.e., the management of the investments—it was not a fiduciary with respect to the charging of its fees because it lacked "discretionary control" over "the particular activity in question," which was the original decision by the plan sponsor to include those investment options with those fees in the plan. Id. at 321 (internal citations omitted).

Here, at the point that Fidelity was negotiating its fees with A&P, it was not a fiduciary of the plan and owed no duty to the plan participants to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(ii). It was simply engaging in an arms-length negotiation for a contract to provide services. Thus, the District Court correctly concluded that Fidelity was not a fiduciary at that time and so it had no fiduciary duty to Plaintiff that could have been breached.

5

At the point in time when Fidelity actually charged the fee for reviewing a DRO, Fidelity did have a fiduciary duty to the A&P Plan and its participants with respect to the administration of those services, but it did not then control the fee structure, as it was set in the agreement with A&P and Fidelity did not have unilateral discretion to change it. [2] Renfro, 671 F.3d at 324 (quoting Hecker v. Deere & Co., 556 F.3d 575, 583 (7th Cir. 2009)) (Defendant "'[did] not act as a fiduciary with respect to the terms in the service agreement if it did not control the named fiduciary's negotiation and approval of those terms.'"); see also Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 472-73 n.4 (7th Cir. 2007) (holding that defendant was not a fiduciary with respect to a fixed fee that was set by an agreement negotiated at arm's length). Therefore, Fidelity cannot be held liable as a fiduciary for the challenged conduct, and Plaintiff's Section 404(a) claim fails.

B.  Breach of Fiduciary Duty by a Co-Fiduciary

Plaintiff next asserts claims under ERISA Section 405(a), which holds co-fiduciaries liable for the breaches of other fiduciaries if they knowingly participate in that breach or have knowledge of that breach and do not make reasonable efforts under the circumstances to remedy the breach.  29 U.S.C. § 1105(a)(1), (3).

Under ERISA, fiduciaries "[may] not avoid liability for . . . mismanagement of the [p]lan by simply doing nothing," Free v. Briody, 732 F.2d 1331, 1336 (7th Cir. 1984), and therefore Section 405 encourages fiduciaries, "as a means of avoiding personal

---

[2] Notably, the fee was predetermined, and the amount charged was based on how the participant prepared the DRO.

liability, to take steps to remedy perceived improprieties in plans operations." Nicolaou v. Horizon Media, Inc., 402 F.3d 325, 331 (2d Cir. 2005) (Pooler, J., concurring).  Here, Plaintiff argues that A&P breached its fiduciary duty to defray costs by agreeing to the $1,200 fee and signing the Trust Agreement, and Fidelity, as another fiduciary of the A&P plan who was aware of A&P's breach, is liable.  Once again, we look to whether Fidelity was a fiduciary when the alleged breach by another fiduciary occurred.  In Renfro, we found that the defendant service provider could not be a co-fiduciary under ERISA Section 405 for the plan sponsor's alleged breach—the decision to include certain mutual funds and their accompanying fees—because the defendant then "owe[d] no fiduciary duty with respect to the negotiation of its fee compensation" as it "was not yet a plan fiduciary at the time it negotiated the fee compensation with [the plan sponsor]." Renfro, 671 F.3d at 324.

Similarly, based on Plaintiff's allegations, at the time that A&P and Fidelity negotiated and signed the Trust Agreement, Fidelity was just an arms-length negotiator who owed no duty to plan participants.  Hence, Fidelity was not then a fiduciary and therefore could not be considered a co-fiduciary under Section 405.  When Fidelity later became a fiduciary, it was only a fiduciary with respect to its administration of plan services, not with respect to the challenged conduct of A&P approving Fidelity's collection of a particular fee.  Because Fidelity cannot be held liable as a co-fiduciary, Plaintiff's Section 405(a) claims fail.

C.  Involvement in Prohibited Transactions

7

Plaintiff also asserts claims under two provisions of Section 406, which prohibit certain transactions that "generally involve uses of plan assets that are potentially harmful to the plan." Lockheed Corp. v. Spink, 517 U.S. 882, 893 (1996).

Section 406(a) prohibits transactions between the plan and a party in interest. The relevant portion of the statute provides:

> Except as provided in section 1108 of this title, . . . a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest [or] transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . ..

29 U.S.C. § 1106(a)(1)(C),(D). A "party in interest" includes insiders to a plan, such as fiduciaries, employers, employees, service providers, and certain stockholders. 29 U.S.C. § 1002(14). Prohibited Section 406(a) transactions between a plan and a party in interest are those "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." Lockheed, 517 U.S. at 893. A party in interest can be held liable for Section 406(a) transactions and be required to disgorge its profits under the remedy provisions of Section 502(a)(3). Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 242-43, 245-249 (2000) (holding that a defendant who provided broker-dealer services to a plan was a party in interest, required to disgorge his profits after the plan fiduciary caused the plan to buy worthless motel properties from him as that was a Section 406(a) prohibited transaction given his insider status). To obtain that remedy, however, Plaintiff must first

8

allege that Fidelity is a party in interest that engaged in one of the statutorily prohibited transactions.

Here, Plaintiff argues that a statutorily prohibited transaction occurred when A&P as a fiduciary caused the plan to hire and pay Fidelity, who was a party in interest, that would result in both a direct furnishing of services between the plan and a party in interest and a transfer of plan assets to a party in interest under Section 406(a). Fidelity, however, was not a party in interest at the time the Trust Agreement was signed.[3] While Fidelity is currently a party in interest as a service provider to the plan, it was not "providing services" and was not a fiduciary when the Trust Agreement was signed, so that transaction did not fall within a prohibited category.

Moreover, "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." Harris Trust, 530 U.S. at 242. Here, there is no allegation that A&P had a prior relationship with Fidelity and there is no fact from which this Court could infer that they showed favoritism to each other or did anything other than engage in arms-length negotiation. Negotiation between such unaffiliated parties does not fall into the category of transactions that Section 406(a) was meant to prevent. Lockheed, 517 U.S. at 893.[4]

---

[3] At the time that Fidelity was collecting the fee under the terms of the Trust Agreement, it was both a fiduciary of the plan and a party in interest, but its conduct in causing the plan to pay the fee for its own benefit cannot trigger liability under ERISA Section 406(a) because this section deals with transactions between two distinct parties. Self-dealing transactions are addressed by ERISA Section 406(b), which we discuss herein.

[4] ERISA Section 408 provides certain exceptions to Section 406(a) prohibited transactions, 29 U.S.C. § 1108(b), but we need not address whether an exception applies

9

We next turn to Section 406(b), which prohibits certain transactions between the plan and a fiduciary. Of relevance here is the portion of the statute that reads "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account . . . ." 29 U.S.C. § 1106(b)(1). Section 406(b)'s purpose is to "prevent[ ] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." Reich v. Compton, 57 F.3d 270, 287 (3d Cir. 1995) (internal citation omitted). Here, Plaintiff argues that Fidelity's act causing the plan to disburse $1,200 of plan assets to itself as compensation for the DRO review constitutes a prohibited transaction because it was a fiduciary at the time of the disbursement.

As previously discussed, Fidelity was a fiduciary only for purposes of administering the plan, not for purposes of negotiating or collecting its compensation. At the time of the disbursement, the fee structure was set and Fidelity lacked discretion to change it. What differentiates this case from cases in which we have held that Section 406(b) applied is the fact that Fidelity, at the time it collected the fee, had no actual control or discretion over the transaction at issue[5] —the price of the previously bargained-for fees.

here, as we do not find that the allegations describe a prohibited Section 406(a) transaction.

[5] For example, 406(b) has been found to prohibit transactions involving kick-backs to fiduciaries and self-negotiated loans. See, e.g., Nat'l Sec. Systems, Inc. v. Iola, 700 F.3d 65, 91-93 (3d Cir. 2012) (holding that a fiduciary who receives consideration in connection with a transaction involving plan assets violated Section 406(b), and a non-fiduciary who facilitated that transaction could be liable); Reich, 57 F.3d at 287, 289-290 (holding that a plan trustee who essentially negotiated on both sides of a mortgage

10

Plaintiff points out that while there are exceptions to Section 406(a) prohibited transactions under Section 408, there are no exceptions to Section 406(b) prohibited transactions. Thus, Plaintiff argues that even if the fees are reasonable, the disbursement of any fees by the fiduciary to pay itself for its services is prohibited. This argument goes too far. Section 406(b)'s purpose is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work. A service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain. See Chi. Dist. Council of Carpenters Welfare Fund, 474 F.3d at 472 n.4 (holding that a service provider who accepted compensation prescribed by an arms-length agreement was not a fiduciary for compensation purposes and therefore not liable under Section 406(b)); Schulist v. Blue Cross of Iowa, 717 F.2d 1127, 1131 (7th Cir. 1983) (holding that Section 406(b) only governs a defendant service provider who was receiving agreed-upon rates directly from a plan if that defendant had discretionary authority or control with respect to the rates agreed to by the plan sponsor).[6]

In short, ERISA prohibits none of the alleged transactions, and thus Plaintiff's Section 406 claims fail.

---

transaction with the plan violated Section 406(b)); Cutaiar v. Marshall, 590 F.2d 523, 530 (3d Cir. 1979) (holding that a transfer between two funds where the trustees are identical but participants and beneficiaries are not violates Section 406(b)).

[6] Cf. Sixty-Five Sec. Plan v. Blue Cross and Blue Shield of Greater New York, 583 F. Supp. 380, 388 (S.D.N.Y.), reargument denied 588 F. Supp. 119, 120 (S.D.N.Y. 1984) (finding an impermissible conflict of interest under ERISA where a service provider had full discretion to grant or deny insurance claims, and the provider's fee was based upon a percentage of any claims it granted).

11

## V.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order granting the motion to dismiss.